Good morning. Richard Levy for the appellant. Veronica Ramirez. This is the case of the third-party notification condition, the occupational restriction. This case is really the convergence of two settled, plain principles in the circuit. One, the principle that a third-party notification requirement is an occupational restriction insofar as it applies to employers. The second is the rightness principle. That's the court case. The second is the rightness principle that Ramirez does not have to wait to see what the probation officer is going to do. She can challenge this on direct appeal, and those cases are discussed in the reply brief. Rodriguez and Weber and Williams. So when those principles come together, you have this case. You have third-party notification, and she is on direct appeal to challenge this. Let me ask you to back up and explain to us why you're here. Why is there an appeal on this case at all in the face of the waiver? The Buchanan case, Judge Clifton, the judge at the very end of the sentencing said you have the right to appeal. And she did have the right to appeal something, but not what you're challenging. Exactly. But it was a categorical statement, unlike some of the other cases cited in the briefs. Is your client at all misled by it? How could she possibly have relied upon that statement? Oh, I can think of several reasons. Number one, the plea agreement itself specifically said the court is not bound by anything in this agreement. The court could sentence her to a higher term than the government promised and so on. So if the court is now saying you have the right to appeal the sentence, can't I? What act of volition did she have following the judge's statement? She had none. There's nothing she could have done in reliance. There was nothing more for her to do. She'd entered the agreement. She'd entered the waiver of her appeal rights. She wasn't misled in the slightest by anything. The only question is whether the judge's comment at the end could be interpreted in such a way as to sweep aside everything that had gone before. The judge didn't have the power to sweep it aside, did he? Oh, yes, he did under Buchanan, Judge Clifton. Well, either of two things. He couldn't have changed the agreement. He could have rejected the agreement. He couldn't have changed it. He revived the right to appeal notwithstanding the agreement under Buchanan and Felix or under the alternative, I believe, of Felix, the government's silence was a waiver of their right to invoke this bar. I don't, I don't, I'm with Judge Clifton on this. I don't understand how this case is like Buchanan or Felix at all because there's nothing inaccurate about the judge's statement. She did have the right to appeal, a very limited component of the sentence. If Nothing to be corrected. If, Judge Watford, if the Court had said you may have the right to appeal some issues, as in one of the cases I believe it was Felix, or I don't know, I'm not sure, you have a plea waiver agreement, you may or may not have the right to appeal. But here it was categorical, unqualified. The judge didn't say you have the right to appeal every single component of the sentence I've just imposed. He said you have the right to appeal the sentence. And it was true. She did. No. I would disagree respectfully, Judge Watford. The right to appeal the sentence is the Challenge the criminal history category calculation. That's part of the sentence. Then the correct phrasing would be you have the right to appeal part of the sentence or the criminal history and so on. I agree that it could have been more clear in terms of the limited nature. But Buchanan and Felix are both cases in which the person had zero right to appeal and the judge said you do have the right to appeal. There's always a right to appeal if it's under case law, if it's unconstitutional. There was no right to appeal. There was no right to appeal, period, in either Buchanan or Felix. In your case, there was a right to appeal. Yes. I understand, Judge Watford. But what I'm suggesting is that even when there is no right to appeal under the plea agreement, there is always a residual right under case law to appeal an illegal sentence or an unconstitutional sentence. So you always have the right to appeal something. So a judge should always say there's a right to appeal. I'm sorry? So a judge should always say there's a right to appeal? You should do what you did in the latter cases. You may have the right to appeal some issues. You can finish this sentence. I'm trying to get the answer. You may have the right to appeal some issues or you may you have the right to appeal certain issues or you may or may not have the right. The formulation is discussed in the reply brief. Okay. I'm sorry. I think we understand your position, but on the merits, let's assume that you're correct and that there is a right to appeal here. On the merits, what is unreasonable? Was there an objection to this condition? No. It's a plain error case. And so what is the plain error? Your client was convicted of a drug offense, is that correct? Right. Drug trafficking. And her prior occupation was in an office that has drugs? No. A dental office. No indication that the office had drugs. A dentist doesn't have drugs? Not the Vicodin or the kinds of things you prescribe after operations. I'm sure they have. There are anesthetics. Right. Right. Right. So what's wrong with this? Exactly as in Britt or as in the closest case, the Tenth Circuit case, Mike, cited in the reply brief, the third party notification, under the guidelines and the statute, there has to be, it's not enough to show a relationship. An occupational restriction is disfavored, unlike all other restrictions. Under 5F of the guidelines, there must be a showing of a direct relation in that it is necessary to protect the public. And here the judge can go on and say. Somebody convicted of drugs. We don't want her going into a circumstance where there may be drugs without at least the people knowing. Doesn't that kind of have a connection? The assumption, Judge Clifton, is that there are drugs available. There are. I will accept this fact that when I go to the dentist, there are drugs in his office. And her profession could lead her to any dentist's office. So it doesn't strike me as an unreasonable inference that she might be working in a place where drugs are available. In that case, if this is a legitimate concern or the record shows that, the court should have made findings. And I want to say this, if she's in the office, if she's in the office, she's  The court can make findings. Dental office, if there are drugs. But if she works in the office. Kennedy, this is a plain error case. If we don't think it would have made any difference, a judge doesn't make findings because there's no objection on that. It's obvious to me the judge could make those findings. So why is this plain error? In the Wolfchild case, the court did. It was a plain error case reversing a condition, not a third party, but another condition, because the judge made no findings, even though it was plain error. So the court always has to make findings, especially for a. Kennedy, what prejudice is there? If I have no doubt whatsoever that findings could be made, how could there be prejudice resulting, the kind of prejudice that's required to find plain error? And there we go back to the relation, the fact that there may be anesthetics in a dental office. And painkillers. I'm sorry? And painkillers. Not necessarily. See, not necessarily isn't good enough, because if there are dentists with painkillers, and I know there are because my wife has bad teeth, and she frequently comes back from the dentist, I have to drive her because she's been doped up, I don't think it's a hard conclusion to reach that there might be painkillers in a dentist's office. Now, let's look at it. Sure, there might be. And certainly the court could say, if this is a dental office that has accessible painkillers that you can steal and distribute, which I doubt. Accessible, but she's working there. See, that's the problem. The, the. It's not as if she's walking in off the street. Okay. But here's the next, the next obstacle, Judge Schroeder. She was convicted of dealing in methamphetamine, not stealing prescription pads, not theft of any kind, not stealing Vicodin or laughing gas or anything. Where is the direct relationship? Just, can she not work in Wal-Mart because Wal-Mart has a pharmacy? Or is, or is the third-party notification required to Wal-Mart because they have a pharmacy and somehow she could get into the pharmacy and steal the Vicodin? I think that is as far-fetched as a general matter as saying for any dental office, you have to, okay, I'll, I'm still in my positive time. So if I could reserve time. You can have it. We'll hear from the government. May it please the Court. Joe McNally on behalf of the United States, Your Honors. Let me start off and just talk about, I think, procedurally, the posture of the case. This is a case where the defendant received a substantial benefit from the appellate waiver in this case. I filed a, opted not to file an 851 enhancement, which would have resulted in a 20-year sentence. She ultimately received a 10-year sentence disposition. And what she's asking the Court to do is, you know, exercise an extraordinary remedy here of piercing the appellate waiver and recognizing a claim that she forfeited on three separate occasions. It was told to her in the plea agreement. It was told to her in the PSR. It was told to her at the change of plea. And in each of those times, she never objected to it. And furthermore, taking a step further, the condition may never come into play. Entirely speculative condition in this case. Well, she wants to appeal. I mean, if she doesn't like the condition, this is the shot where she should do it. So why isn't it the case that under Buchanan, she's entitled to appeal because the judge opened the door? Well, I think the critical difference, and the Court pointed out earlier, is that unlike Buchanan and unlike Felix, the district court's advice here was not inaccurate. You know, defendant focuses a lot on the exact technical statement of the Court and says that the judge could have done more. But he doesn't cite any cases that say that the judge has any obligation to do anything more other than not inaccurately advise the defendant of their appellate rights. And when Judge Carter said to the defendant, you have the right to appeal the sentence, that was absolutely accurate. The defendant had a right to appeal her criminal history category, which in this case was especially important. And the reason for that is in a mandatory minimum case, the only way that you could ever get relief from a mandatory minimum is through the safety valve provision. So the criminal history calculation issue was, I think, especially important here. And that is the critical difference between this case and Felix. I think the other critical difference is, if you look at Felix, it was a case where the defendant ultimately objected to his criminal history. In Buchanan, he also objected in that case to potential departures and raised issues with the district court. And then the district court basically led him astray. The district court said, well, I understand, you know, your concerns, sir, but you have a right to appeal. And so the question is not one of technicalities, as defendant argues. The question is on the facts of this case, were the defendant's reasonable expectations changed? Were those reasonable expectations changed in the face of a defendant, a lay defendant? I think that, you know, there's a lot of talk about legal technicalities, but you have to look at this in the context of a layperson. And a layperson would not, you know, as counsel points out, understand that, you know, you always have a right to appeal certain parts of the sentence if it's unconstitutional or otherwise. You have to view this through the lens of a defendant sitting there, a defendant who had been previously told on three separate occasions that she could not appeal that specific condition. And a district court's consistent statement, absolutely consistent with the plea agreement, that she could appeal her sentence, which included the criminal history, did not change her reasonable expectations. I want to make sure I understand your position. You said she'd been told three separate times she couldn't appeal that specific condition. Is that really true? Did she know that condition was going to be imposed? She knew standard conditions of supervised release, which are publicly available, and I think that any counsel who's sitting down, any able counselor, competent counsel, who's sitting down with their client and going through a plea agreement and says these are the standard conditions of supervised release, I think that there's an expectation that they would sit down and say these are the things that we are giving up as part of this plea agreement. I can't say for sure that that happened in this case, but I think that it's a fair inference that we can draw from the record. So she would have seen it in the plea agreement. Judge Carter specifically went through that provision again at the change of plea hearing. I think that, you know, let me just talk a little bit about Buchanan. And I recognize it's obviously the law of the circuit, but with that said, I would submit that it's a little bit of an anomaly. If you look at Buchanan, I think the most troubling part about it, Your Honors, is a plea agreement, as the Court knows, is a contract between the defendant and the government. And what you have in Buchanan is a statement by a judge who, under Rule 11, is not party and cannot be a party to that agreement. And in that decision, the Court ultimately decides that a single statement by the judge, or multiple statements by the judge, ultimately undo that contract by the parties, that's between the parties. And I think that, you know, the legal underpinnings for that decision, quite frankly, are built on a foundation of sand. If you look at the case that Judge Reinhart cites in Buchanan, it's a case that has to do with a district court judge who ultimately tells the defendant at sentencing that the sentence is going to be concurrent, and then later imposes a consecutive sentence. There's no discussion at all about contract law. There's no acknowledgment that judges are not part of plea agreements pursuant to Rule 11. There's no analysis about whether a third party can interfere. And I understand that at the end of the day, Buchanan is the law of the circuit. But this is a case where this Court has an opportunity to limit Buchanan and limit it to situations where you have affirmatively inaccurate advice. District court judges should not be in a position where they have to technically explain to a defendant all the aspects of their plea agreement. That is their lawyer's job. They have an opportunity. Sotomayor Is this the position of the Justice Department that you want? I think that the position that we would take is that it should be limited to inaccurate advice. And where you have situations where the district court does not provide inaccurate advice, as is the case here, that case, it should be limited to that, and I think that that would significantly limit the scope of Buchanan. So that district court judges aren't in this position where they have to be worrying about whether or not the advice was precise. I think when you go back and you look at Buchanan, the decision is troubling, it is an anomaly, and this Court should limit it. Let me talk briefly about, I think, the merits, if the Court reaches it, on Britt. I think the most troubling part of it is And I'm just curious. Sure. Have you talked to Washington about this? I have not. Okay. I think the most troubling part about Britt and the defendant's position is the defendant essentially says that this Court adopted Peterson. And because it adopted Peterson, it's clearer. And I think that, frankly, that argument taxes credulity, Your Honors. If you look at Britt, this particular condition was not the condition before the Court. There's some language in Britt that obviously isn't favorable to the government in reference to Peterson and says, you know, whatever merit this condition may have when you apply it in the context of employment, it's troubling. But I think it stops short of, frankly, adopting Peterson. And one of the things that I would encourage Your Honors to think about, if you do adopt Peterson and you went that route and said that you are going to hold that a third-party notification requirement ultimately constitutes an occupational restriction, you are vastly expanding the scope of Section 3563b-5, which is the occupational restriction referenced by statute. Which basically, I think, is focused on, you know, very explicit provisions where you prohibit somebody from working in an occupation or you limit the terms on which they can do that. And I think the troubling thing with Peterson, if you adopt the position that essentially any condition that could have the effect of burdening one's occupation constitutes an occupation condition. And that's really what I think the broader reading of Peterson is, is that an employer might not want to hire them. That is an expansive reading of 3563, and one that I think is very troubling if the Court were to adopt it with respect to a lot of other conditions that appear before the Court. Let me give you an example. I think in Reardon, you know, the example there is computer conditions. And if the new test is any type of supervised release condition that has an effect on your ability to obtain or maintain employment, constitutes an occupational restriction, this Court imposes or district courts impose all types of conditions that would fall within that scope. An ankle bracelet. You know, somebody may want a job ultimately as a lifeguard and ultimately be rejected as soon as their employer sees a guy running around with an ankle bracelet. I mean, the analogies go on and on. I mean, regularly in child pornography cases, we impose conditions that require a defendant to, you know, subject themselves to monitoring on their computer, which includes in their workplace. I would imagine that most employers, having learned that their, you know, potential hire has a child pornography condition and is going to have to have special software on there, probably would pass on employment. And so if this Court were to adopt Peterson and read 3563b-5, as broadly as the defendant is asking you to do on plain and error, that's very, very troubling. And if the Court wants to go down that road, I would suggest to you that this is not the case. This is not the case to be expanding 3563b-5, because I think you open up the floodgates on every condition of release out there. Drug tests. You know, a court may impose a condition that somebody do eight drug tests per month. An employer may very well say, hey, I don't want to hire somebody that has that condition, and at the end of the day, opt not to hire them. Under the defendant's view and under Peterson, that's an occupational restriction. And what I would suggest to you is that that was never Congress's intention. With that, I would submit on the briefs and the argument, unless the Court has further questions for me. You have agreed that we should, that one of the counts should be dismissed. Is that correct? That's correct, Your Honor. As part of the plea agreement, which she bargained for, the government agreed to dismiss the count, and I don't think that that was done in the district court. So we'd have to remand for that to be done. For that limited purpose. To comply with the plea agreement. Correct. For that limited purpose. Thank you. Thank you. Roboto. The Court's statement at sentencing was inaccurate. He did not, the Court did not say you have the right to appeal the case, you have the right to appeal the conviction and sentence. The Court said you have the right to appeal a sentence which, by its plain language, applies to all components of the sentence, including the conditions of supervised release. So this is just like Buchanan. Whether or not Ramirez relied on it, I've suggested in my answer to Judge Schopenhauer that she did, but whether or not, it makes no difference. Because in Felix, she, the defendant also was told at the change of plea hearing he can't appeal. She initialed each page of the plea agreement. There was no indication that she or, I'm sorry, he was misled. It doesn't matter under Buchanan and the cases that follow it. Under the parade of horribles that every condition could be an occupational restriction, no, of course not. Reardon makes that clear. But what this Court has held is that third-party notification is an occupational restriction. So that's the law of the circuit. And whether that's going to be extended to other areas where there may be some incidental effect on employment is left for another case. I'm out of time. If I could just say one more thing. No, you are out of time. Okay. Thank you. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted. The next case on the calendar is Salama v. County of Los Angeles. Surprise. Good morning, Your Honors. I'm Rami Kanyali for the appellant.
judges: Schroeder, Clifton, Watford